**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

| | |
|---|---|
| ERENNE COATS and JUSTIN SMITH, individually and on behalf of all other similarly situated persons, | PLAINTIFFS |
| v. | CASE NO. 3:22-cv-00019-MPM-RP |
| WILLIAMS-SONOMA, INC. and WILLIAMS-SONOMA DIRECT, INC. | DEFENDANTS |

**MEMORANDUM IN SUPPORT OF JOINT MOTION
FOR APPROVAL OF FLSA SETTLEMENT**

Following arms-length negotiations and the exchange of detailed information relevant to the Parties' respective claims and defenses, Plaintiffs Erenne Coats and Justin Smith (the "Named Plaintiffs") and Defendants Williams-Sonoma, Inc. and Williams-Sonoma Direct, Inc. ("Williams-Sonoma" or "Defendants") (collectively "the Parties") have reached a proposed settlement in this case. The Parties respectfully request that the Court approve their proposed settlement of this Fair Labor Standards Act ("FLSA") collective action. As fully set forth below, the Parties' settlement is a fair, adequate, and reasonable resolution of the Parties' *bona fide* dispute as to liability and damages under the FLSA and appropriately balances the viability of Plaintiffs' claims and the risks inherent in further litigation in light of the defenses asserted by Williams-Sonoma, while also accounting for a reasonable award of attorneys' fees and costs. Accordingly, the Parties

respectfully request the Court's approval of their proposed settlement of the Plaintiffs' FLSA claims.[1]

## I. PROCEDURAL AND FACTUAL BACKGROUND

On January 31, 2022, Plaintiffs filed the instant litigation (the "Action"), bringing a putative collective action pursuant to 29 U.S.C. § 216(b) for alleged FLSA violations, and a putative class action pursuant to Fed. R. Civ. P. 23 for alleged breach of contract under Mississippi state law. Both causes of action arose out of Ms. Coats's and Mr. Smith's experience working at Williams-Sonoma's fulfillment facility in Olive Branch, Mississippi in November and December 2021. Ms. Coats and Mr. Smith allege that while Williams-Sonoma promised to pay each of them a defined hourly wage for all the time that they worked, and while they both worked during the week of December 12, 2021, Williams-Sonoma did not pay them their legally required minimum wages or promised wages for that week. Plaintiffs allege that there are other hourly employees who were similarly not paid minimum wages or all promised wages. (Compl., ECF No. 2.)

Defendants contend that, during the time-period in question (mid-December 2021), the timekeeping provider Ultimate Kronos Group (UKG) suffered an outage allegedly due to a ransomware attack. *See* UKG Hack Disrupts Scheduling and Payroll for Thousands of Employers, (found at https://www.shrm.org/resourcesandtools/hr-topics/technology/pages/ukg-ransomware-disrupts-scheduling-payroll-kronos-private-cloud.aspx, last visited February 24, 2023). This outage meant that customers of UKG, like Defendants, were unable to access any of the time

---

[1] In order for the Parties to comply with the provisions of the Class Action Fairness Act of 2005 ("CAFA"), the Parties request that the Court not issue an order granting approval of the settlement earlier than 90 days after the service of the notices required by CAFA. See 28 U.S,C, § 1715(d). Since those notices are being mailed today, the Parties request that the Court not issue an order approving the settlement any earlier than June 5, 2023.

2

records reported by its employees in its timekeeping system until sometime in mid-to-late January 2022, seriously complicating the issuance of payroll during this time-period. In response to this outage, Defendants maintain that it promptly took steps to ensure that employees were able to report their hours worked in a timely fashion, and that it would be able to still issue payroll to its employees. Defendants contend that it was certainly challenging to respond to this unforeseen issue and still ensure that its employees were paid in a proper and timely fashion without any access to its electronic timekeeping data, but Defendants did the best that they could under the circumstances. Indeed, despite the challenges presented by the Kronos outage, Defendants believe they generally were able to pay employees their proper wages. To the extent that any individuals were not paid for time worked during this period, Defendants have maintained that it is an aberration due to this circumstance involving UKG at the end of 2021.

The Defendants filed their Answer on July 18, 2022 (ECF No. 32). Since then, the Parties have been engaging in efforts to resolve this matter without the need to undergo extensive discovery and/or for the need for a trial. The Parties succeeded and reached an agreement in principle, and then on December 13, 2022 the Parties requested that the Court stay the remaining deadlines so that the Parties could finalize the settlement terms. (ECF No. 39.) The Court granted the Parties' request on December 20, 2022, granting a stay in this matter until February 3. (ECF No. 40.) On February 3, the parties sought a 21-day extension of the stay, until February 24, 2023, to finalize the settlement documents, which the Court granted. (ECF No. 42.)

Since reaching an agreement in principle, the parties have worked together to craft a settlement agreement addressing: (1) administration of the payment of back wages, liquidated damages, and a general release award to the Named Plaintiffs upon execution of individual release agreements and receipt by Williams-Sonoma of IRS form W-9 for the applicable payments; and

(2) payment of Plaintiffs' attorneys' fees, costs and expenses. Based on their knowledge of the Plaintiffs' claims and Williams-Sonoma's defenses, counsel for the Parties concur that the settlement is fair and reasonable under the circumstances. In support of their Joint Motion, at Defendant's request, the Parties are submitting their proposed Settlement Agreement for *in camera* review by the Court.

II. **LAW AND ANALYSIS**

    A. **The Need for Approval of Settlement of FLSA Collective Actions**

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Villeda v. Landry's Rests., Inc.,* No. H-08-2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009) (citing *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

There is conflicting authority regarding whether such claims may be settled in the absence of Court approval. As the Seventh Circuit stated, the FLSA is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). The Seventh Circuit maintains that because the FLSA "makes it impossible to agree on the amount of pay, it is necessary to ban private settlements of disputes about pay." *Id.* "Otherwise the parties' ability to settle disputes would allow them to establish sub-minimum wages." *Id.* "Courts therefore have refused to enforce wholly private settlements." *Id.*

The Fifth Circuit, however, has enforced a private confidential compromise of an FLSA claim negotiated between an employer and employees even in the absence of court approval, where

there existed "a bona fide dispute as to liability" as to the amount of hours worked and the compensation due. *See Martin v. Spring Break '83 Prod.*, 688 F.3d 247, 255 (5th Cir. 2012).

Given the conflicting authority on this issue, and out of an abundance of caution, the Parties request Court approval of the Settlement Agreement. Although the Parties have decidedly different views of the merits of the litigation, all agree the Settlement Agreement is fair, reasonable, and represents a reasonable compromise of the disputed issues in this case.

Finally, Defendants request the Court review the Settlement Agreement *in camera.* There is no provision in the FLSA that requires Court approval or public approval of the settlement of a disputed FSLA claim. *See Martin*, 688 F.3d at 255. Similarly, there is no requirement that a settlement be made part of the Court's record. *See Almodova v. City &of Honolulu*, No. 07-00378, 2010 U.S. Dist. LEXIS 33199, at *13 (D. Hawaii. Mar. 31, 2010); *Trinh v. J.P. Morgan Chase & Co,* No. 07-CV-01666-W-WMC 2009 U.S. Dist. LEXIS 16477, at *1 (S.D. Cal. Mar. 3, 2009); *Agui v. T-Mobile USA, Inc.*, No. 09-CV-02933-RJD-RML (E.D.N.Y. May 4, 2010). Accordingly, Defendants assert that *in camera* review and approval is appropriate.

### B. Standard for Approval of Settlement of FLSA Collective Actions

Employees can settle and release claims under the FLSA in two ways. First, the FLSA allows employees to settle and waive their claims if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. See 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under § 216(b), an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. *Id.*

5

In reviewing a settlement of a private FLSA claim, the Court must scrutinize the proposed settlement for fairness and determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *see also Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 163 (5th Cir. 2015). When it appears that a settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Additionally, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

  **C.** **A *Bona Fide* Dispute Exists Over Both Liability and Damages**

In reviewing the settlement of a plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 09-1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010). "The requirement of an adversarial posture between parties to a settlement agreement operates as a guarantee that employers cannot profit by coercing employees into waiving their rights, and then dressing that invalid waiver of the FLSA's protections as a valid settlement of a legal claim." *Sims v. Hous. Auth. of City of El Paso*, No. EP-10-CV-109-KC, 2011 WL 3862194, at *6 (W.D. Tex. Sept. 1, 2011). "An actual dispute over the amount of overtime compensation due to an employee [can be] sufficient to create a bona fide dispute for purposes of this factor." *Shaw v. CAS, Inc.*, No. 5:17-CV-142, 2018 WL 3621050, at *1 (S.D. Tex. Jan. 31, 2018).

A *bona fide* dispute exists in this case. Williams-Sonoma has asserted, and continues to assert, that it properly paid Plaintiffs for the period of December 5, 2021 through January 22, 2022, or that any payments that were either not made, or not made in a timely matter were due to the Kronos outrage in December 2021, and thus there is a *bona fide* dispute as to the amount owed to any Plaintiff, and whether Defendants could meet their burden to demonstrate a good faith defense to any liquidated damages.

The Parties both agree that there is substantial risk for both sides. The total settlement amount reflects a reasonable compromise of the Plaintiffs' claimed damages. Although the Parties continue to firmly believe in the merits of their respective claims and defenses, given the time, expense, and risk associated with proceeding through trial and anticipated appellate proceedings, the Parties agree that a compromise is appropriate at this stage of the litigation. They desire to resolve this case by way of a negotiated settlement payment by Williams-Sonoma in exchange for release of claims by Plaintiffs to avoid the time and expense inherent in continued litigation. *See Lynn's Food Stores*, 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

D. **The Settlement is Fair and Reasonable**

"There is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010) (citing *Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)). Additionally, the fact "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

In addition to resolving a *bona fide* dispute between the Parties, the settlement achieved in this case is fair and reasonable and should be approved for at least five reasons. First, the proposed settlement arises out of an action for wages brought by Plaintiffs against their employer. While the amount each Plaintiff ultimately receives will depend on the alleged number of hours worked[2] during the period of December 5, 2021 to January 22, 2022, the amount in the Settlement Agreement is reasonable considering that: (1) Plaintiffs would face a substantial evidentiary burden at trial; (2) Plaintiffs are not highly-compensated employees; and (3) Defendants face liability exposure and significant defense costs if this litigation continues.

Second, there was no fraud or collusion between counsel and the settlement was reached as a result of arms-length negotiations which involved experienced counsel. *See Smith v. M-I, LLC*, 2019 WL 2620734, at *2 (W.D. Tex. Feb. 26, 2019) (finding settlement fair and reasonable when it was negotiated by experienced attorneys and reflected an arms'-length compromise, noting a strong presumption in favor of finding a settlement fair); *see also Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977) (holding that the court is "entitled to rely upon the judgment of experienced counsel for the parties" in assessing a settlement and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel").

Third, during the litigation and settlement of this action, Plaintiffs were represented by counsel both respected in the community and experienced in handling wage and hour collective actions. Plaintiffs' counsel have the experience necessary to assess the risks of continued litigation and benefits of settlement and have done so in this action. Plaintiffs' counsel represents employees with claims against employers similar to the claims asserted in this case. Defense counsel is likewise experienced in defending similar claims. Counsel for both Parties have advised their

---

[2] Plaintiffs' Counsel calculated these hours using Defendants' data.

respective clients regarding the settlement, and they have recommended judicial approval: the Court should afford weight to those recommendations. *See Liger v. New Orleans Hornets NBA Ltd. P'ship*, 2009 WL 2856246, at *4 (E.D. La. Aug. 28, 2009) ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a . . . settlement." (internal citations omitted)); *see also Austin v. Pa. Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("[I]n determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class.")

Fourth, the proceedings have advanced to a stage sufficient to permit the Parties and their experienced counsel to collect, obtain, and review evidence, evaluate their claims and defenses, understand the scope of potential damages, and engage in negotiations with the mutual understanding that continuing with litigation and engaging in trial and appellate practice would be a difficult, costly, and uncertain undertaking.

Fifth, the range of possible recovery in this case was uncertain. As noted above, the Parties' positions on liability and damages are divergent, and the risks of adverse outcomes to both sides, and the uncertainty of any potential recovery by Plaintiffs informed the Parties' decisions to settle and resolve the litigation.

Sixth, the complexity, expense, and likely duration of the litigation should a settlement not have been reached weighs heavily in favor of finding that this settlement is fair and reasonable. Without question, if the case had not settled, the Parties would have spent significant time and resources preparing for and trying the case. Indeed, given the information disclosed by the parties in their initial disclosures, the Parties had anticipated and planned for the potential presentation of testimony by dozens of witnesses. Trial would have been lengthy and expensive, and appeals and post-trial motions were nearly certain to follow. Rather than take this path, the Parties directed

their efforts toward an informed and efficient resolution of Plaintiffs' claims. As the courts in this Circuit have recognized, "[c]lass action litigation is inherently complex, and complex litigation is inevitably costly in terms of both time and money." *Kemp v. Unum Life Ins. Co. of Am.*, No. 14-0944, 2015 WL 8526689, at *5 (E.D. La. Dec. 11, 2015); *Slipchenko v. Brunel Energy, Inc.*, No. H-11-1465, 2015 WL 338358, at *8 (S.D. Tex. Jan. 23, 2015) (discussing complexity and expense of employment class action).

While a number of issues remain unresolved in this litigation, the Parties' settlement discussions enabled counsel to assess the respective strengths and weaknesses of their case and to reach the conclusion that settlement is in the Parties' best interest. The settlement eliminates the substantial inherent risks both sides would bear if this case were to continue. Under these circumstances, the settlement is fair, reasonable, and adequate for Plaintiffs, and the Court should approve it.

Furthermore, the specific back pay settlement amounts and attorneys' fees proposed by the Parties reflect a reasonable apportionment of a settlement based on the number of workweeks worked by the Named Plaintiff and Opt-In/Class Plaintiffs during applicable period of December 5, 2021 through January 22, 2022 and takes into account the number of hours of straight time previously reported and paid and/or alleged by the Named Plaintiffs and Opt-In/Class Plaintiffs to be due and owing. These calculations are the result of detailed work by counsel in advance of and during the course of their negotiations.

Here, the parties proposed settlement is based on the following assumptions that led to the compromise. (1) Although there is substantial dispute about the hours claimed and about liability, the Named Plaintiffs and Opt-in/Class Plaintiffs will be paid for all hours that they claim to have been inappropriately omitted from payment. (2) Even though Defendants assert that a *bona fide*

10

dispute exists, and contend that they can demonstrate their good faith defense to liquidated damages, the Parties have agreed that 50% of the settlement amount shall be allocated to liquidated damages, statutory penalties, and/or other relief to be characterized as non-wage income to the Named Plaintiffs and Opt-in/Class Plaintiffs. (3) Counsel for Plaintiffs is entitled to an attorney fee based on a reasonable lodestar amount. The Parties have exchanged sufficient information to allow each to evaluate these assumptions as they reached as agreement to settle this dispute. Both parties recognized that Williams-Sonoma could prevail based on its defenses and that Plaintiffs could recover nothing and, alternatively, that Plaintiffs could prevail and recover both unpaid straight time pay plus liquidated damages, and attorneys' fees and costs. The resulting compromise is fair and reasonable given the respective risks. The calculation of hours for purpose of reaching the individual awards was made by counsel for Plaintiffs and reviewed and agreed by counsel for Williams-Sonoma.

### E. The Agreed Upon Award of Attorneys' Fees and Costs Is Reasonable

Finally, Plaintiffs' Counsel's request for $71,097.43 in fees and costs is also fair and reasonable and Defendants do not oppose such an award. Section 216(b) of the FLSA provides that where an employee prevails in an action, attorneys' fees under the FLSA are mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975). Because the FLSA is a remedial statute designed to protect workers and guarantee minimum labor standards across the economy, fair compensation for attorneys who take on such litigation furthers the FLSA's purpose. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective of ensuring that every employee receives "a fair day's pay for a fair day's work"). To compensate attorneys for their work, District Courts must determine whether the attorneys' fees and costs are reasonable. *Bryant v. United Furniture Industries, Inc.*, 1:13 Civ. 246-SA-DAS, 2017 WL 639320,

11

at *4 (N.D. Miss. Feb. 16, 2017). Generally, courts in the Fifth Circuit analyze whether an application for attorneys' fees is reasonable under the lodestar method, by "multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work[.]" *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006). "The most critical factor in determining an attorney's fee award is the 'degree of success obtained." *Id.* at 799 (citation and quotation omitted). Further, "[t]here exists a strong presumption of the reasonableness of the lodestar amount." *Id.* at 800. After calculating the lodestar, a court may adjust the lodestar amount based on the twelve *Johnson* factors.[3] *Id.*

Having achieved a settlement of $126,212.74 and securing an excellent result for Plaintiffs, as agreed upon and provided in the settlement agreement, the Court should award Plaintiffs' Counsel $71,097.43 in attorneys' fees and costs.

    **1.    The Hours Expended by Plaintiffs' Counsel Litigating This Case Is Reasonable**

The amount of time Plaintiffs' Counsel spent litigating the federal case is reasonable, especially given the excellent results. Over the course of a little more than a year, Plaintiffs' Counsel has spent over 160 hours prosecuting the case and bringing it to a successful conclusion. Dunn Dec. ¶ 12; Ryan Dec. ¶ 14.[4] This work includes investigating the claims, filing the complaint, appearing for an initial conference, communicating with clients and defense counsel, analyzing Williams-Sonoma's wage and hour records, calculating damages, updating the damages based on Williams-Sonoma's supplemental production of data, and negotiating a settlement. Further,

---

[3] Because the parties have reached an agreement on the fees and costs, because the class members will receive full recovery, and because Plaintiffs' Counsel fee request is less than the lodestar, Plaintiffs' Counsel does not believe that the Court needs to address the twelve *Johnson* factors. However, Counsel is willing to address them should the Court find this necessary.

[4] Approximately 75% of the work was done by non-attorney staff, and thus Plaintiffs' Counsel kept fees to a minimum.

Plaintiffs' Counsel will continue to work on the case, which includes answering class members' questions about the settlement over the course of the next year. Dunn Dec. ¶ 15. Getman, Sweeney & Dunn's and Donati Law's billing records are attached to their respective declarations.

Additionally, Plaintiffs' Counsel here avoided countless hours of work. Plaintiffs' Counsel entered this litigation with expertise in FLSA collective actions and Rule 23 class actions. Indeed, it was unnecessary for the case to proceed very far procedurally to reach a fair settlement in large part because Plaintiffs' Counsel was able to efficiently calculate damages, effectively communicate with seasoned defense counsel, and expedite a settlement.

### 2. Plaintiffs' Counsel's Rates Are Reasonable

When assessing the reasonableness of attorneys' fees, the Court confirms that Counsel's hourly rates are in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 896, 895 (1984). The "relevant community" is not limited only to the "local market area[.]" *Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009); *Ace Am. Ins. Co. v. Walters*, 12 Civ. 442, 2014 WL 523742, at *4 (S.D. Tex. Feb. 7, 2014) (applying market rates based on the relevant legal community); *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381–82 (5th Cir.2011) (finding that it may be appropriate to use out-of-town counsel's local hourly rates as the prevailing market rate). Instead, "courts are free to look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases." *McHugh v. Olympia Ent., Inc.*, 37 Fed. Appx. 730, 740 (unpublished), *as amended on denial of reh'g by* 41 Fed. Appx. 758 (6th Cir. 2002) (unpublished). In other words, "[e]ven if counsel's 'requested rates are high. . . Counsel should be compensated at rates that reflect their skill and their success.'" *In re Auto. Parts Antitrust Litig.*, 12-MD-02311, 2018 WL 7108072, at *3 (E.D. Mich. Nov. 5, 2018).

To "fairly compensate" Plaintiffs' Counsel—who are highly specialized FLSA collective action litigators and who represent workers on a contingency basis in collective and class actions in many jurisdictions across the country— here, the nationwide market is the appropriate community for the Court to look to. As the Second Circuit observed, "[t]he legal communities of today are increasingly interconnected" and defining "markets simply by geography is too simplistic." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 192 (2d Cir. 2008). Indeed, district courts have approved Plaintiffs' Counsel's rates in both lodestar and percentage of the fund fee applications. Dunn Dec. ¶ 16. Further, Williams-Sonoma retained a highly respected nationwide law firm, and its attorneys maintain excellent credentials. Indeed, Williams-Sonoma's lead attorneys — Joshua Waxman and Michael McIntosh — are office managing shareholders of Littler's Washington, D.C. and Tysons Corner, VA offices. Further, Mr. Waxman is a member of the firm's Board of Directors.

Based on the foregoing, and as detailed in Plaintiffs' Counsel's supporting declarations, Plaintiffs' Counsel's rates are reasonable. Dunn Dec. ¶¶12-16; Ryan Dec ¶ 12.

While Plaintiffs' Counsel's lodestar exceeds $77,000, Counsel only seeks $71,097.43 in fees and costs. This results in a reduction of approximately 13% of the lodestar, and with additional post-settlement work over the course of the next year, Plaintiffs' Counsel estimates that the reduction to the lodestar will be closer to 25%. Thus, Plaintiffs' Counsel's fees are reasonable.

    F.    **<u>Plaintiffs' Counsel's Requested Costs Are Reasonable</u>**

In addition to attorneys' fees, litigation costs are recoverable. 29 U.S.C. § 216(b). Here, inclusive in Plaintiffs' Counsel's $71,097.43 payment under the Settlement includes $1,070.52 in litigation costs. Throughout the case, Plaintiffs' Counsel incurred litigation expenses for court filings, service of process, postage and delivery, photocopies and scans, Pacer, and Westlaw

research, which were all necessary to litigate this case and bring it to a successful resolution. Dunn Decl. at ¶ 17; *Heffernan Bryant v. United Furniture Industries, Inc.*, 1:13 Civ. 246-SA-DAS, 2017 WL 639320, at *6 (N.D. Miss. Feb. 16, 2017) (awarding costs for travel, expert witnesses, investigation, discovery, service of process, and other administrative needs); *Diaz v. World Acceptance Corp.,* 1:19 Civ. 957-RP, 2021 WL 2709677, at *2 (W.D. Tex. Jan. 7, 2021) (awarding costs for filing fees, postage, deposition transcript, deposition travel and hotel costs, research charges, document retention database charges, and case advertising). Counsel expects to incur some additional expenses in administering the settlement upon final approval. Dunn Decl. at ¶ 19. Because these costs are reasonable and less than the actual costs, they should be approved.

### III.     CONCLUSION

This FLSA collective action settlement is a product of an arms-length negotiation between counsel and it resolves a *bona fide* dispute over Plaintiffs' FLSA claims. The settlement is fair and reasonable and provides Plaintiffs with significant monetary relief. Accordingly, the Parties jointly and respectfully request that this Court approve the Parties' settlement agreement and the distribution of the settlement amount to Plaintiffs in full as described above and as set forth in the Settlement Agreement. Furthermore, the Parties jointly request that the Court award as reasonable the attorneys' fees and litigation costs in the amount requested in the Settlement Agreement, as well as a service award to the Named Plaintiffs in the amount stated in the Settlement Agreement. Finally, the Parties jointly request that this action be dismissed with prejudice upon the Court's entry of an order approving the settlement.

However, as noted above, in order to comply with the provisions of CAFA, the Parties request that the Court not issue an order approving the settlement any earlier than June 5, 2023.

Respectfully submitted,

| | |
|---|---|
| */s/ William B. Ryan* | */s/ Matthew G. Gallagher* |
| William B. Ryan (MS Bar No. 99667) | Matthew G. Gallagher (MS Bar No. 103159) |
| DONATI LAW, PLLC | LITTLER MENDELSON, P.C. |
| 1545 Union Avenue | 3725 Champion Hills Drive, Suite 3000 |
| Memphis, TN 38104 | Memphis, TN 38125 |
| Telephone: (901) 278-1004 | Telephone: (901) 795-6695 |
| Facsimile: (901) 278-3111 | Facsimile: (901) 881-4333 |
| Email: Billy@donatilaw.com | Email: mgallagher@littler.com |
| | |
| Matt Dunn (*pro hac vice*) | Joshua B. Waxman (*pro hac app. pending*) |
| GETMAN, SWEENEY & DUNN, PLLC | LITTLER MENDELSON, P.C. |
| 260 Fair Street | 815 Connecticut Avenue, N.W., Suite 400 |
| Kingston, NY 12401 | Washington, DC 20006 |
| Telephone: (845) 255-9370 | Telephone: (202) 789-3406 |
| Facsimile: (845) 255-8649 | Facsimile: (202) 842-0011 |
| Email: mdunn@getmansweeney.com | Email: jwaxman@littler.com |
| | |
| COUNSEL FOR PLAINTIFFS | COUNSEL FOR DEFENDANTS WILLIAMS-SONOMA, INC. AND WILLIAMS-SONOMA DIRECT, INC. |

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and exact copy of the foregoing Joint Notice has been served, via electronic mail, through the Court's Electronic Case Filing System, this 7th day of March 2023, upon the following:

William B. Ryan (MS Bar No. 99667)
Donati Law, PLLC
1545 Union Avenue
Memphis, TN 38104
Telephone: (901) 278-1004
Facsimile: (901) 278-3111
Email: Billy@donatilaw.com

Matt Dunn (*pro hac vice*)
Getman, Sweeney & Dunn, PLLC
260 Fair Street
Kingston, NY 12401
Telephone: (845) 255-9370
Facsimile: (845) 255-8649
Email: mdunn@getmansweeney.com

Attorneys for Plaintiffs

*/s/ Matthew G. Gallagher*